IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 26-cv-00890-KAS

PASCAL KARUHIJE,

     Petitioner,

v.

DAVID VENTURELLA, Acting Director ICE,[1]
GEORGE VALDEZ, Field Director ICE, and
JUAN BALTAZAR, Warden,

     Respondents.

_____

# ORDER
_____

## ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA

This matter is before the Court on the Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [#4] (the "Amended Petition"), which was filed by Pascal Karuhije ("Petitioner"). The Court ordered Respondents to show cause within five days of service why the Petition should not be granted. *Second Order to Show Cause* [#8]. Respondents filed a Response to the Amended Petition [#14] (the "Response"). Respondents also filed a Motion to Expedite Ruling to Vacate Order [#15]. The Court then issued a Third Order to Show Cause [#21] directing Petitioner to show cause, in light of the Response [#14], why the relief requested in the Amended Petition [#4] should not be considered moot; in response to the Third Order to Show Cause [#21]  Petitioner filed

---

[1] Petitioner names Todd Lyons as the Acting Director of U.S. Immigration and Customs Enforcement and Robert Guadian as the Field Office Director for the Denver Field Office of U.S. Immigration and Customs Enforcement. Mr. Venturella is automatically substituted in Mr. Lyons's place and Mr. Valdez is automatically substituted in Mr. Guadian's place pursuant to Fed. R. Civ. P. 25(d).

a Reply to Third Order [#25] (the "Reply"). The Court then issued a Minute Order [#26] directing Respondents to file supplemental briefing; Respondents accordingly filed their Brief [#26] ("Respondents' Supplemental Brief").

The parties have each consented to this Court's jurisdiction. *Consent to Jurisdiction* [#19]. The Court has reviewed the briefs, the entire case file, and the applicable law. For the reasons set forth below, the Court **ORDERS** that the Amended Petition [#4] be **DENIED**.

## I.    Background

Petitioner, Pascal Karuhije, is a noncitizen of the United States who has been in immigration detention since approximately February 6, 2024. *Am. Pet.* [#4] at 4 (ECF pagination). At the time of filing his Petition, Petitioner was detained at the Aurora Contract Detention Facility in Aurora, Colorado. *Id*. Petitioner states that he became subject to a final order of removal on November 26, 2024. *Id*. Construing Petitioner's Amended Petition [#4] broadly,[2] Petitioner alleges that Respondents have violated his due process rights by not providing him with a constitutionally adequate bond hearing or otherwise releasing him from custody. *See id.* at 5 (ECF pagination).

Petitioner has sued David Venturella, the acting Director of Immigrations and Customs Enforcement ("ICE"); George Valdez, the Acting Field Office Director for the Denver Field Office for ICE; and Juan Baltazar, the Warden of the Aurora Contract Detention Center. *See id.* at 1 (ECF pagination).

---

[2] The Court must construe liberally the filings of a pro se litigant. *See Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). In doing so, the Court should neither be the pro se litigant's advocate nor "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

This matter is ripe for disposition. No party has requested an evidentiary hearing or oral argument, and the Court finds that no hearing is necessary. *Garcia Cortes v. Noem*, No. 25-cv-02677-CNS, 2025 WL 2652880, at *1 (D. Colo. Sept. 16, 2025) (declining to hold a hearing where the petitioner's habeas challenge was "fundamentally legal in nature").

## II.    Legal Standard

Section 2241 of Title 28 authorizes a court to issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## III.    Analysis

The Court first notes that Petitioner's due process claim, unlike many otherwise similar claims recently before this Court, does *not* turn on whether Respondents may properly detain Petitioner pursuant to § 1225(b) such that he is not entitled to a bond hearing. Moreover, the parties do not dispute that Petitioner is detained pursuant to 8 U.S.C. § 1231(a)(6) and that he is currently subject to a final order of removal. *See, e.g.*, *Response* [#14] at 3, 7-8; *Reply* [#25] at 1. The Court also notes that Respondents have stated that they are able and willing to deport Petitioner posthaste. *Response* [#14] at 6, 9. Moreover, Petitioner alleges generally that Respondents have violated his

"constitutional right[ ] to . . . due process" in making the decision to continue his detention rather than releasing him on bond, *see Am. Pet.* [#4] at 5 (ECF pagination), but he does not otherwise independently raise or cite any point or source of law in support of his release. The Court accordingly considers whether Respondents have violated Petitioner's due process rights by continuing to detain him under these specific circumstances.

8 U.S.C. § 1231(a)(1)(A) states that "[e]xcept as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days[.]" Petitioner argues that because he has been detained for over 90 days, he must be immediately released. *Am. Pet.* [#4] at 6 (ECF pagination). Respondents argue that they are able to deport Petitioner posthaste, implying that even if Petitioner's continued detention has exceeded constitutionally permissible limits, this issue is now moot because he will imminently be deported. *See, e.g.*, *Respondents' Supp. Brief* [#27] at 8 ("Allowing Petitioner to be removed, pursuant to the IJ's final order of removal, will end his immigration detention. Once he is no longer in immigration detention, this habeas matter will be moot.").

On April 30, 2026, the Court ordered Petitioner to "show cause . . . in light of Respondents' representation . . . that Petitioner is eligible to be deported by April 30, 2026, why the relief requested in the Amended Petition [#4] should not be considered moot." *Third Order to Show Cause* [#21]. The Court ordered Petitioner to do so because the Amended Petition [#4] fails to address why any due process issues related to Petitioner's ongoing detention would not be resolved by his deportation. *See, e.g., Singh v. Choate*, No. 23-cv-02069-CNS, 2024 WL 309747, at *2 (D. Colo. Jan. 26, 2024) (holding that "Applicant's recent release from ICE custody and deportation have rendered

4

this case moot," even though petitioner alleged that his continued detention by ICE was unlawful); *Millano Chirinos v. Fabbricatore*, No. 21-cv-01127-CMA, 2021 WL 2529763, at *2 (D. Colo. June 21, 2021) (holding that petitioner's argument of unlawful detention was mooted by his apparent deportation and stating that "Applicant has obtained the relief he requested: he has been released from detention and ICE custody.")

Petitioner has failed to show why the relief he requests in the Amended Petition [#4] should not be considered moot. While Petitioner continues to argue that due process violations have rendered his continued detention unlawful, he fails to address, let alone contest, Respondents' representation that they are able and willing to deport him to the Democratic Republic of Congo (DRC) immediately. *See generally Reply* [#25]. Even if Respondents failed to provide Petitioner with due process in determining whether Petitioner should remain detained pending his removal, in the absence of any argument from Petitioner otherwise, the Court finds that this issue is now moot because Respondents are ready and able to deport Petitioner immediately. Accordingly, the Court finds that Petitioner has conceded that the relief he requests in the Amended Petition [#4] is now moot because he is eligible to be deported immediately and because Respondents have represented that they are able to deport Petitioner posthaste.

This is not the end of the Court's analysis, however, because Petitioner asserts a "fear for [his] life" if he is deported to DRC, where "[he] ha[s] only seen [his] whole family die at a very young age[.]" *Reply* [#25] at 3. Therefore, the Court considers whether Respondents were required to comply with the requirements of 8 C.F.R. § 208.30 (requiring credible fear determinations for "stowaways" and "applicants for admission") and 8 U.S.C. § 1231 (setting forth requirements applicable to the '[d]etention and removal

of aliens ordered removed')." *Minute Order* [#26] at 2 (ordering further briefing from the Respondents on the issue). On May 14, 2026, the Court ordered Respondents to address the following issues:

> (1) whether Petitioner has received a credible fear interview, and if not, why not;
>
> (2) whether the Attorney General has reached any determination as to whether Petitioner's life or freedom would be threatened in the DRC because of his race, religion, nationality, membership in a particular social group, or political opinion; and
>
> (3) the extent to which Respondents contend they have complied with 8 C.F.R. § 208.30(e), 8 U.S.C. § 1231(b), or related regulations and statutory provisions, regarding Petitioner's fear that he will be killed if deported to the DRC.

*Id*. at 3. The Court accordingly turns to Respondents' arguments regarding those issues.

The Court agrees with Respondents that Petitioner is not entitled to—and was never entitled to—a credible fear interview because he was never detained pursuant to 8 U.S.C. § 1225, and only individuals detained pursuant to § 1225 are entitled to credible fear interviews. *See* 8 C.F.R. § 208.30(a) (establishing the right to a credible fear interview but noting that "[t]he provisions of this subpart B apply to aliens subject to sections 235(a)(2) [or 8 U.S.C. § 1225(a)(2)] and 235(b)(1) [or 8 U.S.C. § 1225(b)(1)] of the Act."). Accordingly, the Court concludes that Respondents need not apply any of the requirements set forth in 8 C.F.R. § 208.30 in Petitioner's case.

The Court also agrees with Respondents that Petitioner has not sufficiently alleged that he is entitled to any applicable protections pursuant to 8 U.S.C. § 1231. 8 U.S.C. § 1231(b)(3)(A) provides that "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social

6

group, or political opinion." Respondents plan to deport Petitioner to the DRC, but Petitioner states that he fears harm if he returns to the DRC and instead requests that Respondents remove him to Uganda, where he states that he resided immediately before he obtained asylum in the United States. *Reply* [#25] at 3. Accordingly, the Court asked Respondents to address whether the Attorney General has reached any determination as to whether Petitioner's life or freedom would be threatened in the DRC. *See Minute Order* [#26] at 3.

Respondents note that an immigration judge already considered issues related to Petitioner's fears regarding returning to the DRC but found that Petitioner had only raised those issues on filing a motion to reopen his removal proceedings despite having had ample opportunity to do so previously. *See Ex. E to Respondents' Supp. Brief* [#27], *Immigration Judge's Order* [#27-4] at 4-5 (ECF pagination). In line with the immigration judge's opinion, Respondents argue that they were not required to address Petitioner's fears because he did not timely raise them during removal proceedings. The Court agrees. Petitioner has provided this Court with no reason to doubt the representations raised in the immigration judge's opinion, which clearly and thoroughly explains why Petitioner had multiple opportunities—while represented by counsel—to raise the issue that he fears harm if he returns to the DRC, but nonetheless failed to do so.[3] *See id*.

Moreover, Petitioner has raised no argument that the Attorney General is required to proactively or sua sponte address whether Petitioner's life or freedom would be threatened if he returns to the DRC. Respondents, on the other hand, state that "a

---

[3] The immigration judge also discussed whether Petitioner was likely to face harm if he returned to the DRC and noted that "contrary to [Petitioner's] allegations, the country conditions in the DRC have improved, not worsened[ ]" and that Petitioner failed to address, much less show, "that he cannot reasonably relocate to a safe DRC province." *Id*. at 5 (ECF pagination).

noncitizen *may apply* for restriction (also known as withholding) of removal to prevent his deportation to a particular country[,]" and that a petitioner bears the "burden to establish a clear probability that his life or freedom would be threatened by his race, religion, nationality, membership in a particular social group, or political opinion." *Respondents' Supp. Brief* [#27] at 4 (emphasis added); *see also Perez-Garcia v. Barr*, 814 F. App'x 356, 360 (10th Cir. 2020) (articulating the petitioner's burden). Petitioner does not claim that he applied for withholding of removal, nor does he claim that he raised his fears regarding the DRC before his belated appeal. In the absence of any argument from Petitioner to the contrary, the Court concludes that Petitioner has failed to show that the Attorney General is required to proactively address the issue of whether Petitioner's life or freedom would be threatened and that Petitioner has also failed to show that he timely raised this issue to the Attorney General.

Even construed broadly, Petitioner's filings offer no other argument as to why he is or would be entitled to any further protections, particularly due process protections, that might permit his immediate release or prevent him from deported to the DRC.[4] The Court therefore concludes that in Petitioner's case, Respondents have fully comported with the relevant requirements of 8 U.S.C. § 1231. The Court also finds no other obstacles to Petitioner's deportation and further finds that the due process issue Petitioner raises is now moot because Respondents are able to deport Petitioner posthaste.

---

[4] The Court notes that 8 U.S.C. § 1231(b)(2)(A) provides that "any alien not described in paragraph (1) [which deals with aliens arriving at the United States] who has been ordered removed may designate one country to which the alien wants to be removed, and . . . the Attorney General shall remove the alien to the country the alien so designates." However, Petitioner has not contended that Respondents deprived him of the opportunity to designate such a country. Therefore, the Court need not address this issue.

Accordingly, the Amended Petition [#4] must be denied. In denying the Amended Petition [#4], the Court also finds no reason to prevent Respondents from deporting Petitioner. The Court therefore vacates its Second Order to Show Cause [#8] directing that Respondents shall not remove Petitioner from the District of Colorado or the United States. Accordingly, the Court simultaneously grants Respondents' request to vacate the Second Order to Show Cause [#8]. *See Motion to Expedite Ruling to Vacate Order* [#15].

### IV.     Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that the Petition [#1] be **DENIED without prejudice**.

IT IS FURTHER ORDERED that the Motion to Expedite Ruling to Vacate Order [#15] is **GRANTED**. The Second Order to Show Cause [#8] directing that Respondents shall not remove Petitioner from the District of Colorado or the United States is hereby vacated.

IT IS FURTHER **ORDERED** that Respondents must effectuate Petitioner's deportation by no later than July 13, 2026.

IT IS FURTHER **ORDERED** that by no later than June 18, 2026, Respondents must file a status report informing the Court whether or not they anticipate being able to deport Petitioner by July 13, 2026.[5] By no later than July 20, 2026, Respondents must file a further status report informing the Court whether or not Petitioner has been deported.

---

[5] In particular, the Court notes that there is currently an Ebola outbreak in the DRC. Despite researching this issue, the Court is aware of no principle of law that would protect Petitioner from being deported to the DRC under such a circumstance. Nonetheless, the Court notes that Respondents ought to consider whether they will face obstacles related to this outbreak in effecting Petitioner's deportation before filing this status report. *See, e.g.*, *Elliott v. Lynch*, No. 15-cv-6906-SDW, 2016 WL 632227, at *1 (D.N.J. Feb. 17, 2016) (noting that an Ebola outbreak in Sierra Leone temporarily prevented petitioner from being deported to that country).

Dated: June 12, 2026

BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge

---

The Court also notes that if, despite their prior representations otherwise, Respondents are currently unable to effectuate Petitioner's speedy deportation, the Court will consider reevaluating its stance that the issues raised in the Amended Petition [#4] are moot.